### HENSLEY v. GREEN et al.
#### No. 169.

District Court, W. D. South Carolina.

Dec. 30, 1940.

R. B. Pasley, of Spartanburg, S. C., for plaintiff.

Carlisle, Brown & Carlisle and Hannon & Lancaster, all of Spartanburg, S. C., and M. R. McCown, of Tryon, N. C., for defendants.

WYCHE, District Judge.

Plaintiff, a resident of South Carolina, commenced this action in the Court of Common Pleas of Spartanburg County, against two residents of Tryon, North Carolina, as defendants. On September 30, 1940, service of the summons was had on J. T. Green personally in South Carolina. At the same time and place a copy of the summons was delivered to J. T. Green "as agent of W. S. Green".

W. S. Green had for many years been a resident of Tryon, North Carolina, where he had maintained an office and had various business connections. He was a stockholder, director and the president of Tryon Builders Supply Company, a South Carolina corporation, which owned and operated a planing mill in the upper part of Spartanburg County, South Carolina. He owned a tract of land in the lower part of Spartanburg County and the complaint alleges that J. T. Green, while acting as agent of W. S. Green in certain matters connected with this land, did certain wrongful acts to the injury of plaintiff, to wit, by breaching a contract to assist plaintiff in purchasing a truck and by causing plaintiff to be falsely arrested and imprisoned, to his damage in the sum of $10,000.

At the time that the two copies of the summons were delivered to J. T. Green he was at the plant of Tryon Builders Supply Company in Spartanburg County, South Carolina; appearing in due time for that purpose, J. T. Green filed in the state court on October 19, 1940, petition and bond for the removal of the cause to this court. W. S. Green did not join in the petition for removal; but, the record having been filed in this court on November 6, 1940, W. S. Green, appearing specially and only for the purpose of objecting to the jurisdiction, served on November 8, 1940, a notice of motion to quash the service of summons. On November 17, 1940, plaintiff served notice of a motion to remand on the ground that W. S. Green had not joined in the removal of the cause.

The motion of W. S. Green to quash the service and the plaintiff's motion to remand were heard together on affidavits by agreement of the parties. There is no material dispute as to the facts, but the difference between the parties relates rather to the legal effect of the same.

The motion to remand must take precedence, for unless the case has been properly removed, this court has no jurisdiction to decide other questions. But because of the rule of law that J. T. Green could remove of his sole motion only in case W. S. Green had not been served with process or had not appeared, there is inherent in the motion to remand the question whether on the record at time of removal W. S. Green had been served with process or had appeared.

Resisting the motion to remand, counsel cite the case of Pullman Co. v. Jenkins, 305 U.S. 534, 59 S.Ct. 347, 350, 83 L. Ed. 334, where it was said: "Where there is a non-separable controversy with respect to several non-resident defendants, one of them may remove the cause, although the other defendants have not been served with process and have not appeared." The right of removal is determined by the case disclosed by the record when the petition therefor is filed. Salem Trust Co. v. Manufacturers' Finance Co., 264 U.S. 182, 44 S. Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867; Pullman Co. v. Jenkins, supra. The certified copy of the record filed in the office of the Clerk of the District Court discloses that service was attempted on W. S. Green by leaving a copy of the summons with J. T.

Green, as his agent; and the inquiry thereby presented, whether W. S. Green was duly served with process, may be stated as follows: (a) Does subdivision (4) of Section 434 of the South Carolina Code (1932) providing for substituted service by delivery "to any person employed * * * at the place of business of said defendant" apply to an individual non-resident defendant; (b) if that statutory provision is so applicable, were its requirements met in this instance, i. e., by delivery of the summons at the place of business of W. S. Green. With reference to the South Carolina Code provision, "as the question involved is the interpretation of a statute of South Carolina, it is elementary that it must be decided in accordance with the law as laid down by the Supreme Court of that state". Southern Ry. Co. v. South Carolina Public Service Commission, D.C.S.C., 31 F.Supp. 707, 709, 711, citing Georgia Ry. & Power Co. v. Decatur, 262 U.S. 432, 438, 43 S.Ct. 613, 67 L.Ed. 1065. The question therefore is answered by the case of Armstrong v. Brant, 44 S.C. 177, 21 S.E. 634, 635, where referring to the provision of Section 434 quoted above, the court said (parenthetical references added): "It seems to us clear that the purpose of section 155 (now 434) was to provide how service may be made upon a person within the state, and then the Code proceeds, in the very next section, 156 (now 436), to provide how service may be made upon persons outside of the state, for the section opens with these words: 'When the person on whom the service of the summons is to be made cannot, after due diligence, be found within the state,' going on to provide how service may be made in such a case, showing very clearly that the legislature, after providing how service may be made upon a certain class of persons, to wit, those who may be found within the state, by the terms of section 155 (now 434), intended to provide a different mode of service upon persons of a different class, to wit, those outside of the state." The foregoing construction of the statute should end the inquiry so far as it relates to service of process on W. S. Green, but plaintiff has earnestly contended that W. S. Green had rendered himself amenable to substituted service in South Carolina because he owned a tract of land in South Carolina where he transacted certain business connected with its upkeep, with the cutting of timber by Paul Hamilton, with whom, so the complaint alleges, W. S. Green had "en-

tered into a contract for the purpose of cutting the saw timber off of said premises," and with a contract with plaintiff, the complaint further alleges "by the terms of which the defendants sold to W. H. Hensley all of the standing timber that was too small for saw timber". Plaintiff has, however, cited no federal decision sustaining his position. He has relied on Davidson v. Doherty & Co., 214 Iowa 739, 241 N.W. 700, 91 A.L.R. 1308, which construes a state statute essentially different from the South Carolina statute and which had been uniformly construed by the Iowa court of highest authority as applicable to non-residents. The decision is not in harmony with the weight of authority as stated in an annotation following the case in 91 A. L.R. at page 1332: "It may thus be seen that the weight of authority, including that of the Supreme Court of the United States, is to the effect that a statute providing for service of process other than personal in an action against a non-resident doing business in the state, without a seizure of his property within the state, is unconstitutional and void. As said in 21 R.C.L. 1281: 'The court may seize his property within the state by its process, and, on such reasonable constructive notice to him as the legislature may direct, apply the property to the payment of his debts; but the legislature cannot declare that to be personal service on a citizen of another state, not actually found within the state, which is not so in fact. Such non-resident person, unlike a corporation, carries on business in this state not by virtue of its consent, but by virtue of the Federal Constitution, which guarantees to the citizens of each state all privileges and immunities of citizens of the several states; hence it cannot be implied from the fact that he does business within the state that he consents to submit himself to the jurisdiction of its courts in personal actions on service of process on his agent.' "

Among the Supreme Court cases reviewed in the A.L.R. note is Flexner v. Farson, 248 U.S. 289, 39 S.Ct. 97, 98, 63 L. Ed. 250, where substituted service was attempted on a non-resident individual. Mr. Justice Holmes, delivering the opinion, referred to the contention that "the defendants by doing business in the State consented to be bound by the service prescribed. The analogy of suits against insurance companies based upon such service is invoked." "But", the opinion continues, "the consent that is said to be im-

674

plied in such cases is a mere fiction, founded upon the accepted doctrine that the States could exclude foreign corporations altogether, and therefore could establish this obligation as a condition to letting them in. Lafayette Ins. Co. v. French, 18 How. 404, 15 L.Ed. 451; Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co., 243 U.S. 93, 96, 37 S.Ct. 344, 61 L. Ed. 610. The State had no power to exclude the defendants and on that ground without going farther the Supreme Court of Illinois rightly held that the analogy failed, and that the Kentucky judgment was void."

In the case of Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 633, 71 L.Ed. 1091, the Supreme Court declared: "The mere transaction of business in a state by nonresident natural persons does not imply consent to be bound by the process of its courts." Citing Flexner v. Farson, supra. It may be considered significant in this connection that the South Carolina statute providing for substituted service on those who transact their business within the state without complying with local statutory prerequisites, including the designation of a process agent, applies only to foreign corporations and does not mention individuals (Sec. 7765, Code of 1932, amended by Acts 1933, p. 486), whereas the statute providing for substituted service on the non-resident owners of automobiles operated in South Carolina is applicable generally to non-residents (Section 437, Id.). So that even if it be considered that the transaction of such business as may have been incident to the ownership of a tract of land in South Carolina constituted the "transaction of his business" in a general legal sense, still W. S. Green would not thereby have rendered himself amenable to substituted service in the state. In any event the attempted service on W. S. Green was not at his place of business in South Carolina. The proof of service sets out that the two defendants were served "at their place of business in Spartanburg County, South Carolina". It is undisputed that the service was made at the plant of Tryon Builders Supply Company. Plaintiff's attorneys have contended that delivery of a copy of the summons there to "J. T. Green, as agent of W. S. Green," constituted service on W. S. Green within the meaning of subdivision (4) of Section 434 of the South Carolina Code (1932), providing for substituted service by delivery "to any person of discretion * * *

employed at the place of business of said defendant". Plaintiff has made an affidavit that in the latter part of 1939, he "frequently saw W. S. Green at said place of business directing the operations of the enterprise". However, Tryon Builders Supply Company is a corporation, and W. S. Green's presence there is wholly consistent with his corporate connection, and rather negatives than supports an inference that the plant was the place of business of W. S. Green. The proof otherwise is convincing that W. S. Green maintained his place of business in Tryon and that the plant of Tryon Builders Supply Company was not his place of business. It, therefore, necessarily follows from the foregoing that the defendant, W. S. Green, has not been legally served with process.

In passing on the motion to remand, however, it must be decided whether W. S. Green has appeared as contemplated in the decision of the Supreme Court in the case of Pullman Co. v. Jenkins, supra, for it is conceded that in an action against two defendants on joint tort where the petition for removal to the federal court alleges that both defendants are non-residents, the petition should be made on behalf of both, unless one of the defendants has not been served with process and has not appeared. Pullman Co. v. Jenkins, supra; Powell v. Southern Ry., 110 S.C. 70, 96 S.E. 292; Chicago Ry. v. Martin, 178 U.S. 245, 20 S. Ct. 854, 44 L.Ed. 1055.

Shortly after the service of the process on J. T. Green and the attempted service on W. S. Green, John L. Lancaster, Esq., one of the attorneys appearing to quash the service on W. S. Green, and to resist the motion to remand, wrote the following letter to plaintiff's attorney, which was, in due course of mail, received by him:

"October 7, 1940

"Hon. R. B. Paslay
"Attorney at Law
"Spartanburg, S. C.
"Dear Mr. Paslay:

"In Re: W. S. Hensley vs.
W. S. Green, et al.

"Please be advised that we represent the above named defendants and will give you our answer within a few days.

"However, if you insist upon immediate answer, before the time expires, so advise us, and we will try to comply with your wish.

"Yours very truly,
"JLL:MB          John L. Lancaster"

On October 15, 1940, another letter was directed to plaintiff's attorney and received by him in due course of mail, as follows:

"October 15, 1940

"Mr. R. B. Paslay
"Attorney at Law
"Spartanburg, S. C.

"Dear Bob:

"In re: W. H. Hensley vs. W. S. Green and J. T. Green

"We had intended answering the above styled suit before now, but my wife has been seriously ill for some time and is now in the hospital where she has undergone several operations this week.

"However, if you will indulge us a few days longer, we will give you our answer or demurrer as the case may be.

"Yours very truly,
"Hannon & Lancaster
"JLL:MB          By: John L. Lancaster"

After the petition for removal was served on plaintiff's attorney, the defendant J. T. Green served notice that he would appear before the State Circuit Court for the purpose of obtaining an order transferring the cause as to him to the United States District Court for trial. The plaintiff appeared in the State court to resist this motion, and submitted the letters of October 7, 1940, and October 15, 1940, from John L. Lancaster, Esq., one of the attorneys for the defendants. Thereupon, Judge T. S. Sease stated that he would not proceed further until it was determined whether or not Mr. Lancaster had full power and authority of the defendants to write the letters. Whereupon, Mr. Lancaster's authority was conceded and such authority was also conceded in open court at the hearing before me. The record as certified to this court fails to include the letters from defendants' counsel to plaintiff's counsel. These letters were considered by Judge Sease at the hearing before him, and should have been included in the certified record to this court, and such record is amended accordingly.

Rule 17 of the South Carolina Circuit Court Rules is as follows: "Notice of Appearance or Retainer.—Service of notice of appearance or retainer generally by attorney for the defendant shall in all cases be deemed an appearance, and the plaintiff on filing such notice, at any time thereafter, with proof of service thereof, may have the appearance of the defendant entered as of the time when such notice was served." On the 27th day of December, 1940, in compliance with this rule, the letters from Mr. Lancaster to Mr. Paslay were filed with the Clerk of Court of Common Pleas for Spartanburg County, with proof of service thereon. Therefore, in accordance with the rule, the appearance of the defendant should be entered as of the time when the letters were written. If these letters, taken in connection with Rule 17 of the South Carolina Circuit Court Rules, constitute a general appearance, the motion to remand must be granted. Pullman Co. v. Jenkins, supra. The law recognizes only two kinds of appearances, special and general. It will readily be conceded that the letters do not constitute a special appearance. Then, do they constitute a general appearance under the provisions of Rule 17, supra? Analyzing the first letter, Mr. Lancaster serves notice upon plaintiff's attorney that (1) he represents the defendants in the cause; (2) that he will serve an answer in a few days; (3) that if an answer will be required before expiration of time he will make an effort to comply with counsel's wishes. The second letter Mr. Lancaster notifies plaintiff's attorney that he had intended answering the complaint before the date of his letter, but if counsel would indulge him a few days longer he would serve an answer or demurrer. Considering these letters in connection with Rule 17 it will be seen that Mr. Lancaster (1) served a notice of appearance for the defendants, (2) he served notice that he would answer or demur. This could only mean that he appeared generally, and not specially, and if he did, Rule 17 provides "it shall be deemed an appearance", meaning a general appearance. This rule has not been construed by the Supreme Court of South Carolina, nor does it seem ever to have been called to the attention of that court in the decisions involving this question, but I cannot see how any other conclusion could be reached in construing the rule in connection with the facts in this case.

For the foregoing reasons the motion to remand should be and is granted.